DOMENGEAUX, Judge.
Plaintiff, Honeywell, Inc., initiated this proceeding seeking to recover from Jimmie B. Guinn, Inc., Jesse F. Heard & Sons, Inc., and the latter’s surety, Travelers Indemnity Company, for payment of $11,513.00 allegedly remaining due for work performed in constructing the LaSalle General Hospital of Jena, Louisiana. The trial judge found liability as to Jimmie B. Guinn, Inc., but dismissed plaintiff’s claim against Jesse F. Heard & Sons, Inc. and Travelers Indemnity Company. From this adverse judgment plaintiff has appealed.
The issue presented on appeal is whether or not defendants, Jesse F. Heard & Sons, Inc. (hereinafter referred to as Heard, Inc.) and Travelers Indemnity Company (hereinafter Travelers) are liable to the plaintiff on a labor and material payment bond which Heard, Inc. had entered into with Travelers.
In October of 1977, Heard, Inc. entered into a construction contract with the Board of Commissioners of the LaSalle General Hospital. In connection therewith, as general contractor they secured a labor and material payment bond from Travelers. In performance of its contract, Heard, Inc. sub-contracted Jimmie B. Guinn, Inc., which in turn, sub-contracted appellant, Honeywell, Inc., for the furnishing and installation of a pneumatic system of automatic temperature control. There remains no dispute as to Jimmie B. Guinn, Inc.’s liability to Honeywell. But, defendants, Heard, Inc. and Travelers, contend that they should not be liable to Honeywell, Inc. because: (1) Honeywell, Inc. did not timely file its claim; and (2) there is no privity of contract between Honeywell and Heard, Inc.
No reasons were rendered by the trial judge for his decision but in light of the fact that he denied recovery, we must conclude that he found the claim to have been untimely filed. For the reasons hereinafter stated, we agree and conclude that recovery should not be allowed under the provisions of the Public Works Act, La.R.S. 38:2241, nor should recovery be allowed under the terms of the labor and material payment bond.
La.R.S. 38:2242 of the Public Works Act provides:
“Any person to whom money is due for doing work, performing labor, or furnishing materials or supplies for the construction, alteration, or repair of any public works, or furnishing oil, gas, electricity, or other materials or supplies for use in machines used in the construction, alteration, or repair of any public works, excluding persons to whom money is due for the lease or rental of movable property, but including any architect or consulting engineer employed by the owner or his duly authorized agent or representative or engaged by the contractor or subcontractor in connection with the building of any public work, may after the maturity of his claim and within forty-five days after the recordation of acceptance of the work by the governing authority or of notice of default of the contractor or subcontractor, file a sworn statement of the amount due him with the governing authority having the work done and record it in the office of the recorder of mortgages for the parish in which the work is done. After the filing and recor-dation of claims, any payment made by the governing authority without deducting the amount of the claims so served on it shall make the authority liable for the amount of the claim. If an architect or engineer has not been employed by the contractor or subcontractor he shall have no claim to or privilege on the funds due the contractor or subcontractor, nor shall such architect or engineer be within the coverage of the payment and performance bond required of the contractor by R.S. 38:2241.” (Emphasis added).
In order for a claimant to assert the rights provided for in the Public Works Act he must file his claim “within 45-days of the recordation of acceptance of the work by the governing authority.” Here the acceptance of the work by the governing authority was recorded May 12,1980, and plaintiff filed his claim on October 7, 1980. Thus *975 plaintiff was well outside the parameters of the 45-day statutory lien period.
As pointed out by the Louisiana Supreme Court the effect of filing the sworn affidavit is two-fold:
“First, it accords to those not enjoying contractual privity with the general contractor a right of action against both the contractor and his surety; second, upon the filing and recordation of the affidavit as claimed, any payment made by the governing authority without deducting the amount of the claim renders the authority liable for the claim.” Thurman v. Star Electric Supply, Inc., 307 So.2d 283 (La.1975). (Emphasis added).
It should be noted that the second effect, i.e., attaching liability to the governing authority, is conditioned “upon the filing.” Thus a general contractor would not incur liability under the provisions of the Public Works Act absent a timely filing of the sworn affidavit. Further, with the general contractor incurring no liability under the terms of the Public Works Act the provisions under that chapter do not apply. Here plaintiff’s claim was filed too late under the provisions of the statute and accordingly any rights he may have held under the Public Works Act had expired.
That, however, does not end our consideration of the issue. The Louisiana Supreme Court in Construction Material, Inc. v. American Fidelity Fire Insurance Company, 388 So.2d 365 (La.1980), indicated that the Public Works Act does not prohibit a surety company from extending bond coverage to claims for labor, materials and equipment beyond that required by the statute. In Construction Materials, Inc., the Court, in discussing the purposes of the Public Works Act, stated:
“The statute’s aim is to define the types of claims to be given protection and to make the governing authority responsible for their deduction and payment out of the contractor’s receipts. The legislation clearly does not forbid a contractor and his surety from providing security for the payment of claims falling outside the ambit of statutory protection. In fact, the Public Works Act makes clear that it shall not be construed to deprive any person of his right of action on the contractor’s bond. La.R.S. 38:2247, in pertinent part, provides:
‘Nothing in this Part shall be construed to deprive any person or claimant within the terms of this Part of his right of action on the contractor’s bond which shall accrue at any time after maturity of his claim .... ’
Defendant surety argues that this provision was intended to provide protection only for ‘a claimant within the terms’ of the statute. We think it clear, however, that the section was designed to protect ‘any person’ with a ‘right of action on the contractor’s bond.’ Claimants whose claims fall within the ambit of the statutory protection have no need of the savings clause. It was specifically for the benefit of those persons and claimants whose rights depend solely on the contractor’s bond that the section preserving their actions was added.” (Emphasis added).
At 367
It is thus clear that a contractor and his surety may provide security for the payment of claims falling outside the ambit of statutory protection. That being the ease we must look to the provisions of the bond supplied in the case sub judice to determine if supplementary protection was provided.
The bond in question defines a claimant as “one having a direct contract with the principal or with a sub-contractor of the principal for labor, material, or both, used or reasonably required for use in the performance of the contract.” There is no dispute to the fact that Honeywell, Inc. had a direct contract with Jimmie B. Guinn, Inc., “a sub-contractor of the principal,” and thus plaintiff clearly falls within the instrument’s definition of a claimant.
The bond further provides that “[n]o suit or action shall be commenced hereunder by any claimant, unless claimant, other than one having a direct contract with the *976 principal, shall have given written notice to any one of the following: the principal, the owner, or the surety above named, within ninety (90) days after such claimant did or performed the last of the work or labor, or furnish the last of materials for which said claim is made, .... ” The record expressly establishes that plaintiff “did or performed the last of [his] work or labor”; and within the subsequent ninety days (the contractually established period) his notice of the claim was given. Therefore plaintiff’s notice was timely under the provisions of the bond.
The bond next requires that even if notice has been timely given “[n]o suit or action shall be commenced hereunder by any claimant after the expiration of one (1) year following the day on which principal [Heard, Inc.] ceased work on said contract .... ” This suit was filed on August 28,1981. In order to be within the contractually established cutoff date it would have been necessary for the principal, Heard, Inc., to have ceased work no sooner than August 28, 1980. But this is not the case, for although there is conflicting evidence in the record, we find that at the latest, Heard, Inc. completed the contract on August 18, 1980. Honeywell’s general foreman testified that they were the last persons on the job and that they had completed their contract work on August 18, 1980.[1] Thus the principal’s, Heard, Inc.’s, obligation on the contract was fulfilled at latest on August 18, 1980. This suit was commenced on August 28, 1981. The action was thus begun beyond one year after the principal ceased work on the contract and consequently the suit is outside the permissible period of the bond.
Plaintiff is not entitled to recover under the provisions of the Public Works Act nor is he entitled to any relief under the provisions of the labor and material payment bond.
For the above and foregoing reasons the trial court’s judgment, in favor of Honeywell for $11,513.00 against Jimmie B. Guinn, Inc. and dismissing the demands against Jesse F. Heard & Sons and Travelers Indemnity Company, is affirmed. All costs on appeal are assessed against appellant, Honeywell, Inc.
AFFIRMED.
GUIDRY, J., concurs.

. Raymond Huval, Honeywell’s general foreman, testified at trial:
“Q. When was the last work that you performed on the Honeywell job?
A. That was on August 18th.
Q. And that would have been work in accordance with your bid proposal to Jimmie Guinn, or was that repair work that you were doing?
A. No, sir. That was part of my proposals.
[[Image here]]
Q. Can you tell me who was the last man to work on the LaSalle General Hospital was?
A. Yes, sir, I did.”